FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**OF MASSACHUSETTS (BOSTON)**
2019 JUN -3 PM 1: 09

Case# _____

Emmanuel Evariste
    V.
City of Boston
   and
PO Gordon Dimbrosio

U.S. DISTRICT COURT
DISTRICT OF MASS.

## Complaint

Here comes the plaintiff Evariste with a complaint against the City of Boston and PO Gordon Dimbrosio of the Massachusetts Probation Service. The plaintiff is a probationer at Boston Municpal Court (central). The plaintiff was place on probation on August 9th, 2017. PO Gordon Dimbrosio is the plaintiff Evariste probation officer. On April 3rd, 2018, the plaintiff was arrested on a probation warrant issued by PO Dimbrosio for failure to report. The plaintiff was arraigned on April 4th, 2018 and ordered to report to probation on May 17th. 2018 to meet with PO Dimbrosio in person. The plaintiff complied with the court order and he evidently reported to probation on May 17th, 2018 and there is record of that he filled out his probation reporting form. On that very day the plaintiff Evariste met in person with PO Dimbrosio and the plaintiff was arrested again for possession w/ intent. On June 25th, 2018 at his arraignment, the probation department produced a violation sheet whcih the plaintiff is introducing exhibit 2. In this sheet, there is a list of violation and the plaintiff is marked for 3 violations. 2 of the violation are for 2 new cases that the plaintiff received bail on each. The third violation is failure to report from 2/2/18 to present which was June 25th, 2018 at that moment. Therefore probation department and PO Dimbrosio claimed the plaintiff failed to report on May 17 as he was ordered by the Judge since that date falls between 2/2/18 and June 25th, 2018. As a result the Judge ordered the plaintiff to be held on a probation detainer. The plaintiff was held on this probation detainer until December 3rd, 2018 to be reprobate after being sentenced on September 27th, 2018 to 6-months in the house of correction. The plaintiff was reprobate to 42 months on probation. PO Dimbrosio deliberately lied on that violation sheet causing the plaintiff to be held on a probation detainer when the plaintiff did evidently complied with court orders. That was a gross negligent act on the part of PO dimbrosio, lack of supervision of probation officers on the probation department and the City of Boston depriving the plaintiff of his freedom, citing Berg V. County of Alleghency 219. F, 3rd 261- Court of Appeals 3rd circuit, 2000. Citing Herring V. US 555 US 135 S. CT. 695, 172 L. Ed 2d 496 Supreme Court, 2009.

    **(1) A city may only be held liable under § 1983** if an official City policy that immediately caused the constitutional violation in question citing Miller v. City of Boston, 586 F. Supp. 2d. 5, 2008. In Monell, the Supreme Court held that a municipality is only liable under § 1983 if the plaintiff proves that an official government policy or custom directly caused{586 F. Supp. 2d 8} the constitutional violation. A "single incident of unconstitutional activity" is generally not enough unless there is proof that the "policy can be attributed to a municipal policymaker." To survive a Rule 12(b)(6) motion to dismiss, a § 1983 claim against a municipality for failure to train probation officers must assert a "sufficient basis for concluding that [city] policymakers reasonably should have anticipated that a probation [officer] would need supervision in his or her duties. The complaint must allege that the City:          (A) knew when it hired the officer that the risk of negligent behavior was obvious; or
(B) later learned of the risk but took no steps to provide adequate oversight.
(C) on 02/02/18 PO Dimbrosio lied to violate the plaintiff on his probation causing the court to issue an arrest warrant. There was no oversight of PO Gordon actions. On June 25th, 2018, PO Dimbrosio produce a probation violation sheet where it falsely stated the plaintiff Evariste failed to report from 02/02/18 to present which would be June 25th, 2018 at that time and again there was no oversight of PO Dimbrosio actions.
(D) on April 7th, 2019 during a hearing to clear a warrant issued by the court on a motion to vacate judgment of the criminal matter of #1701CR1418 which is the cause of this action, again PO Dimbrosio lied in court stating the plaintiff wasnt yet sentence for his June 24th, 2018 arrest by


Page ①

BPD officers. The plaintiff criminal attorney John O'Neil had to rebuked PO Dimbrosio statement to clarified the plaintiff was in fact sentence for his June 24th, 2018 arrest and had in fact served his time. Another counsel who was present also clarified to the court that Immgration official know as "ICE" do not take subjects in custody prior to convictions but only in post-convictions period. The fact of the matter is there is no oversight of PO Dimbrosio's duty. He does as he pleases and is prone to state any inaccurate statement he chooses in disregard of the plaintiff Evariste 5th Amendment rights to due process which are procedural and substantive clause.

(E) The United States Court of Appeals for the Tenth Circuit affirmed, holding that the District Court's instruction properly stated the standard for municipal liability (729 F.2d 456). Stevens, J., dissented, expressing the view that municipalities are liable under § 1983 for the unconstitutional activities of their agents that are performed in the official course of their duties.

**Inadequate training or supervision does in fact amount to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge."**

(F) The offcial city policy in question that cause the negligent supervision of PO Gordon Dimbrosio is the **2001 Mass. Legis. Serv. Ch. 117 (H.B. 4800), line 0339-1001**. Those enactments were never codified in the Massachusetts General Laws. This policy stripped Judges of authority over probation officers working in their courtrooms and gives oversight strictly to the Commisioner of probation. Citing Mass. Gen. Laws ch. 276, § 98 establishes the office of the Commissioner of Probation. That statute sets forth the Commissioner's duties, *(Ref)(Attached to complaint)

    **(2)**This negligent act on the part of PO. Gordon Dimbrosio was unlawful according to M.G.L Part IV, Title II, Chapter 276, and Section 85 which states "Probation officer shall keep full records of all cases investigated by him or placed in his care by the court and of all duties performed by him. According to section 96 "Any probation officer who refuses or neglects to perform any of the duties required of him shall forfeit two-hundred dollars to the use of the Commonwealth." Kent v. Commonwealth, supra. Thus, for harm to be actionable, it must, as in any consideration of causation in a tort case, have been a foreseeable result of the negligence. Id. at 320.

    **(3)** Intentional infliction of emotional distress claims. The plaintiff asserts {852 N.E.2d 1103} that it was error to dismiss his claims against the probation officers for intentional or reckless infliction of emotional distress. 8 With respect to intentional torts, including intentional infliction of mental distress, claims against the public employer are barred, see G.L. c. 258, § 10 (c), but may be asserted against the public employee in his individual capacity. By contrast, where only ordinary negligence is alleged, claims may not be asserted against the public employee, but may be brought against the public employer. See G.L. c. 258, § 2. For purposes of G.L. c. 258, recklessness is considered negligent, rather than intentional, conduct. See Forbush v. Lynn, 35 Mass. App. Ct. 696, 699, 625 N.E.2d 1370 (1994); Jackson v. Milton, 41 Mass. App. Ct. 908, 908-909, 669 N.E.2d 225 (1996). Accordingly, to the extent that the plaintiff alleges reckless behavior on the part of the probation officers, the claim is barred by the statute and dismissal was appropriate.

    **(4)** To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show (A) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . .;

(B) that the conduct was 'extreme and outrageous,' was 'beyond{67 Mass. App. Ct. 181} all possible bounds of decency[,]' and was 'utterly intolerable in a civilized community' . . .;

(C) that the actions of the defendant were the cause of the plaintiff's distress . . .; and

(D) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'" Agis v. Howard Johnson Co., 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976). Here, the complaint alleges facts that constitute negligence, not purposeful behavior, on the part of the probation officers. Specifically, it is alleged that, among other things, the probation officers erred in identifying the subject of the warrant, and that they failed to intercede when the police battered the plaintiff. If, notwithstanding characterization of the acts as intentional, the complaint in fact alleges only negligent behavior, the claim is barred under G.L. c. 258, § 2. Compare Schenker v. Binns, 18 Mass. App. Ct. 404, 406, 466 N.E.2d 131 (1984).

(4) General Laws c. 258, § 10, inserted by St. 1978, c. 512, § 15, provides in relevant part: "The provisions of sections one to eight, inclusive [permitting certain claims against public employers for negligence on the part of public employees], shall not apply to: . . . (b) any claim based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on

the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

**(5)** This is a case of negligence and malicious prosecution because PO Dimbrosio deliberately lied on the probation violation sheet of June 25th, 2018. This was more than a grave mistake. It was an intentional, deliquent, and neglgient act that was premeditated.This court has jurisdiction because this is federal question under cause of the 1983 Civil Rights Act.To establish liability under 42 U.S.C.S. § 1983, a plaintiff must demonstrate that the defendant, acting under color of state law, violated his or her federal constitutional rights, thereby causing the complained of injury. There are two aspects to the second inquiry:

(A) there must have been a deprivation of federally protected rights, privileges or immunities, and
(B) the conduct complained of must have been causally connected to the deprivation.

This second element of causal connection in turn requires that the plaintiff show:
(A) it was the defendant's own actions that deprived the plaintiff of the protected right; and
(B) that the conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference. Furthermore, the plaintiff must also show that each individual defendant was involved personally in the deprivation of constitutional rights because no respondent superior liability exists under § 1983. **A city may only be held liable under § 1983 for its own unconstitutional action. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Thus, under § 1983, a municipal government will only be held liable when the "execution of [the municipal] government's policy or custom . . . inflicts the injury." Id. at 694.**

(C) Plaintiff has brought suit under 42 U.S.C. § 1983 alleging a violation of his Fourth Amendment rights. Section 1983 provides, in pertinent part: "Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .. 42 U.S.C. § 1983.In order to maintain a section 1983 action, the conduct complained must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right." Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980); see also, Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) (statutory deprivations).

**(6)**The plaintiff Evariste suffered great harm due to the torts committed by PO Dimbrosio which the City of Boston is held liable for such as intentional infliction of emotional distress. (A)The plaintiff has serve a total of 10 months and he is currently in the custody US Immigration and Custom Enforcement.

(B)The plaintiff has been a victim of a motor vehicle accident.The plaintiff suffered serious damages through this motor vehicle accident known as impairment. The plaintiff suffers from loss of bodily functions in his shoulder which are permanent in duration. The plaintiff suffered from disfigurement. One of the plaintiff's shoulder is higher than the other shoulder and the plaintiff body looks very disproportionate. The plaintiff lost his capacity to earn and he has lost his home and vehicle. The plaintiff was self-employed as a construction worker and he can no longer fulfill the heavy duty that his required of construction jobs. The plaintiff suffered permanent disability from the accident and he is not entitled to social security benefits due to his immigration status. (C) The plaintiff has been a victim of PREA while in custody of US immigration and Custom Enforcement which the City of Boston holds a share liability for. In conclusion,The defendants' actions and decisons has caused the plaintiff great harm, mental anguish, pain and suffering. In total relief the plaintiff is seeking $10 million in judgement.

Respectfully Submitted

5/24/19

Page ③

**\* *(Ref)* "<u>The official City Policy in questioned</u>"** (attachment)

For the office of the Commissioner of Probation; provided notwithstanding the provisions of any general or special law, rule or regulation to the contrary, said commissioner, subject to appropriation, shall have exclusive authority to appoint, dismiss, assign and discipline probation officers, associate probation officers, probation officers-in-charge, assistant chief probation officers and chief probation officers. **2001 Mass. Legis. Serv. Ch. 117 (H.B. 4800), line 0339-1001.**

**1.Those enactments were never codified in the Massachusetts General Laws.**
Mass. Gen. Laws ch. 276, § 98 establishes the office of the Commissioner of Probation.3 That statute sets forth the Commissioner's duties, which include the following:
Subject to the approval and direction of the [CJAM], the commissioner shall perform such duties and responsibilities as otherwise provided by law or as designated from time to time by the [CJAM], and shall be responsible for: making recommendations to the first justice and the [CJAM] on the appointment of chief probation officers, assistant chief probation officers and probation officers . . . .Mass. Gen. Laws ch. 276, § 98.
From 2001 to 2011, ch. 276, § 83 provided: "Subject to appropriation, the commissioner of probation may appoint, dismiss and assign such probation officers to the several sessions of the trial court as he deems necessary."4
Chapter 211B establishes the Trial Court of the Commonwealth. Section 8 creates an "advisory committee on personnel standards" with various members, including the Commissioner of Probation.3 That committee is charged with "advis[ing] the [CJAM] who shall establish and promulgate standards for the appointment, performance, promotion, continuing education {994 F. Supp. 2d 175} and removal of all personnel within the trial court." Mass. Gen. Laws ch. 211B, § 8. All appointments "governed by [those] standards" must be certified as compliant to the CJAM, and the CJAM has the power to reject any appointment for "non-compliance with the standards for appointment." Id.
Pursuant to that statute, the CJAM has promulgated standards for appointment and promotion of personnel, which are set out in the Personnel Manual. Section 4.000 of the Manual states that "the objective of the hiring process is to select the most qualified individuals." Section 4.304 provides that "[i]t is the policy of the Trial Court that all appointments be made solely on the basis of merit. The practice and appearance of nepotism or favoritism in the hiring process are to be avoided."
Each year from 2001 to 2011, the Massachusetts legislature included the following provision in the budget line item detailing the appropriations for OCP:
For the office of the commissioner of probation; provided notwithstanding the provisions of any general or special law, rule or regulation to the contrary, said commissioner, subject to appropriation, shall have exclusive authority to appoint, dismiss, assign and discipline probation officers, associate probation officers, probation officers-in-charge, assistant chief probation officers and chief probation officers . . . .2001 Mass. Legis. Serv. Ch. 117 (H.B. 4800), line 0339-1001 (emphasis added). Those enactments were never codified in the Massachusetts General Laws.
Defendants contend that these latter enactments are "unequivocal," and that they give the Commissioner "the sole and exclusive authority to make Probation hiring decisions." Def. Mem. at 18-19. In particular, defendants point to the use of the word "notwithstanding," which they contend "signifies that these provisions override all statutes, regulations, or other authorities suggesting that the Commissioner has less than 'exclusive' hiring authority or that the Commissioner is bound by limits other than Probation's budget." Id. at 19.4 Thus, the argument goes, it does not matter what representations defendants made to the CJAM, or whether the hires were based on merit as required by the Personnel Manual, because the Commissioner could have hired whomever he chose.
**2. Judicial Interpretation of the Statutes**
Defendants' argument would have considerably greater force if not for a pair of Supreme Judicial Court cases interpreting ch. 276, § 83 and the Massachusetts statutory framework governing the


Page ①

hiring of probation officers. See First Justice of the Bristol Division of the Juvenile Court Department v. Clerk-Magistrate of the Bristol Division of the Juvenile Court Department, 438 Mass. 387, 780 N.E.2d 908 (2003); Anzalone v. Administrative Office of the Trial Court, 457 Mass. 647, 932 N.E.2d 774 (2010). Taken together, those cases stand for the proposition that the Massachusetts legislature has not stripped, and cannot strip, the judiciary of the authority to approve or reject the hiring of probation officers.

{994 F. Supp. 2d 176} a. The First Justice Opinion

In First Justice, two state judges filed a lawsuit contending that the court reorganization statutes enacted in 2001 violated the Massachusetts constitution. The statutes at issue included a variety of provisions directed to the appointment and supervision of clerks and probation officers. Id. at 389. Among other things, the challenged statute included the 2001 amendment to Chapter 276, § 83, which contained the following language:

Subject to appropriation, the commissioner of probation may appoint, dismiss and assign such probation officers to the several sessions of the trial court as he deems necessary.Id. at 411. The plaintiffs contended, among other things, that the statutes unconstitutionally "eliminate[d] the authority of the CJAM to appoint, dismiss, and assign probation officers in the trial court" and shifted those powers to the Commissioner of Probation. First Justice, 438 Mass. at 390, 395.

The Supreme Judicial Court upheld the statutes, but under a narrow construction. The SJC first noted that article 30 of the Massachusetts Declaration of Rights prohibited the legislature from interfering with "the judiciary's core functions" or enacting legislation "that attempts to restrict or diminish those judicial powers that are necessary to the court's ability to perform its core judicial functions." Id. at 396. Citing to articles 29 and 11 of the Declaration of Rights, the court noted that "from these lofty principles . . . flows the concept of inherent judicial powers." Id. at 397. It then stated:

The scope of inherent judicial authority reaches beyond traditional adjudicatory powers and encompasses (but is not limited to) the court's power to commit the fiscal resources of the Commonwealth and other governmental agencies necessary to ensure the proper operation of the courts, the power to make rules governing the internal organization of the courts and to control the practice of law, and the power to control and supervise personnel within the judicial system.Id. (citations omitted).

After addressing the roles of clerks and assistant clerks under the constitutional structure, the court turned to probation officers. It observed that "[t]he work of probation officers, like that of clerks and assistant clerks, is intimately connected to the existence and function of the judiciary." Id. at 399.

**3. After delineating the principal duties of probation officers, and noting their "critical role" in the courts, id. at 400, the court concluded:**

What can be distilled from the above are the following principles. First, . . . probation officers perform duties essential to the processing of cases and, in the larger picture, the successful functioning of the Trial Court and the proper administration of justice. Second, judges' authority to control and supervise judicial personnel includes inherent authority, independent of statute, to ensure that . . . probation officers serving in their courts are qualified and possess the skills and competence to enable them to perform their duties in a professional manner and in conformity with governing statutes, rules, orders, and standards of accountability. Third, any attempt by the Legislature to restrict or nullify this inherent authority would likely be void under art. 30.Id. at 401 (emphasis added).

The SJC did not, however, invalidate the statutes as unconstitutional. Instead, it {994 F. Supp. 2d 177} accepted the narrowing construction offered by the defendants, that the statutes did not render clerks and probation officers "immune" from judicial authority and oversight. Id. at 402.5 As to probation officers, the court held:

We construe the statute to speak solely to channels of administrative authority within the department of probation, and not to the ability of judges to direct and supervise probation officers assigned to their court rooms or promptly to address any misbehavior on the part of such officers.Id. at 406.

It then stated the following:

It is important to note here that the CJAM retains substantial authority with regard to the appointment of probation officers. . . . The CJAM . . . retains the power to appoint the commissioner and substantial authority to supervise and direct the performance of all his duties, including the selection of probation officers. The CJAM also retains the broad authority stated in

G.L. c. 211B, § 9, including superintendence of the administration of the Trial Court and personnel management. As discussed with respect to the appointment of clerks, it remains entirely within the CJAM's power to establish a set of conditions that the commissioner would be required to follow in the appointment of probation officers, including strict compliance with all aspects of the personnel manual.Id. at 407 (emphasis added).

**3.The SJC's analysis ended with an "observation":**

Any disputes involving the authority of the CJAM, Chief Justices, or First Justices over clerks, assistant clerks, or probation officers that may arise in the future will be adjudicated under the narrow interpretation of the challenged statutes set forth in this opinion. In the meantime, the CJAM (in collaboration with First Justices and departmental Chief Justices) is to monitor and ensure that appointments falling under the statutes are made on their merits in conformity with governing requirements and standards, and that performance remains subject to the supervision of judges.Id. at 407-08 (emphasis added).

Respectfully Submitted

5/24/19

Page ③